UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN THE MATTER OF THE          §
EXTRADITION OF                §          SA-21-MJ-605-HJB
EVERARDO GUERRERO LUJAN       §

## MEMORANDUM AND ORDER

Before the Court in the above-styled cause of action is the United States' formal request to the United States Department of State for the extradition of Everardo Guerrero Lujan. (Docket Entry 27-1.) The United States files its request for extradition on behalf of the Government of Mexico, which is seeking to extradite Guerrero Lujan to faces charges of aggravated homicide and aggravated theft committed while in Mexico. (*Id.*) On July 14, 2022, the Court held a hearing on the extradition request, at which Guerrero Lujan and his attorneys were present. After considering the United States' request, the documentation, and evidence submitted in support thereof, as well as the briefing from counsel and arguments at the hearing, the Court will grant the request for extradition and issue a certificate of extraditability to the Secretary of State as to Guerrero Lujan.

## I.    Factual Background.

The record reflects that the Government filed a Complaint for the Provisional Arrest of Guerrero Lujan with a View Towards Extradition on May 24, 2021. (Docket Entry 3.) The Complaint indicated that that Guerrero Lujan had been charged in Mexico with two crimes allegedly committed within the jurisdiction of Mexico in violation of the articles of the Criminal Code for the State of Zacatecas: Aggravated Homicide, as defined by Articles 293, 299, and 301 Section I; and Aggravated Theft, as defined by Articles 317 and 320 Sections I, IV, and VII. (*Id.* at 1–2.) These crimes relate to an incident occurring on July 28, 2010, allegedly perpetrated against Rogelio Perez Rodriguez by Guerrero Lujan and a group of others.

The allegations in the Complaint are as follows: In the afternoon of July 28, 2010, Guerrero Lujan and a group of compatriots were together drinking alcohol. (Docket Entry 3, at 2.) The group ended up walking along a rural road. (*Id.*) They approached a house, outside of which was a truck and a tractor. (*Id.*) Perez Rodriguez exited the house when the group approached. (*Id.*) One of the members of the group requested that Perez Rodriguez drive them back into town; Perez Rodriguez refused, claiming that he did not have the keys to either vehicle and that neither vehicle had gasoline. (*Id.*) The group did not accept this answer; they took Perez Rodriguez into his home and began to beat him. (*Id.*) Evidence revealed that the group beat Perez Rodriguez with their fists, a shovel, and an axe, eventually killing him. (*Id.*) After they killed Perez Rodriguez, the group searched his house and found keys to the two vehicles. (*Id.*) They then placed Perez Rodriguez's body in the bed of the truck and drove both vehicles away. (*Id.*) The group threw Perez Rodriguez's body from the bed of the truck, and his body was later discovered by authorities at the base of a hill. (*Id.* at 2–3.)

A warrant for Guerrero Lujan's arrest was issued on March 6, 2015, by Judge Juan Antonio Garcia Villa, Judge of First Instance and Family Matters in the Judicial District of Jerez de Garcia Salinas, Zacatecas. (Docket Entry 39-1, at 18–70.) On May 24, 2021, the undersigned issued an arrest warrant based on the Complaint (Docket Entry 4), and Guerrero Lujan made an initial court appearance on May 27, 2021, at which time this Court ordered Guerrero Lujan detained (Docket Entry 5). (*Id.* at ¶ 5.) The Court set an extradition hearing for July 14, 2022; prior to the hearing, the Government submitted its Certified Formal Extradition Package containing the Certified State Department documents supporting the extradition request (Docket Entries 39-1 and 39-2), and a memorandum of extradition law (Docket Entry 35) for this Court's review.

2

## II.     Discussion.

### A.     *The Extradition Process.*

The process of extraditing a fugitive from the United States to Mexico is governed by the provisions of the federal extradition statute, 18 U.S.C. §§ 3181–3196, and the extradition treaty between the United States and the United Mexican States ("the Treaty"). The Treaty provides that the United States and Mexico mutually agree to extradite fugitives who are charged with crimes in one country and subsequently found within the territory of the other. *See* Extradition Treaty Between the United States of America and the United Mexican States, U.S-Mex., May 4, 1978, 31 U.S.T 5059, *as amended by* the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, S. Treaty Doc. No. 105-46 (1998). The terms of an extradition treaty should be liberally construed so as to affect the "intention of the parties to secure the open and reciprocal surrender of fugitives to be tried for extraditable offenses." *In re Extradition of Garcia*, 825 F. Supp. 2d 810, 815 (S.D. Tex. 2011) (citing *In re Extradition of Rodriguez Ortiz*, 444 F. Supp. 2d 876, 883 (N.D. Ill. 2006) (citing *Factor v. Laubenheimer*, 290 U.S. 276, 293–94 (1933)).

The foreign extradition process begins with the discovery of a foreign fugitive within the territory of the United States. *In re Extradition of Garcia*, 825 F. Supp. 2d at 815. Mexico may then request the provisional arrest of the fugitive in cases of urgency pursuant to Article 11, and the United States must comply with a valid request. 31 U.S.T 5059, art. 11. A judicial officer is authorized to issue a warrant for the arrest of any fugitive whose extradition is requested, upon a sworn complaint charging the fugitive with committing an extraditable offense. 18 U.S.C. § 3184.

The next stage in the extradition process is the extradition hearing conducted by a federal court, to hear the evidence and determine whether that evidence is "sufficient to sustain the charge

under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. A request for extradition should be granted only if the following findings are made:

> (1) the judicial officer has jurisdiction to conduct an extradition proceeding;
>
> (2) the Court has jurisdiction over the fugitive;
>
> (3) the person before the Court is the fugitive sought;
>
> (4) there is an extradition treaty in full force and effect;
>
> (5) the crimes for which surrender is requested are covered by that treaty; and
>
> (6) there is competent legal evidence to support the finding of probable cause as to each charge for which extradition is sought.

*In re Extradition of Garcia*, 825 F. Supp. 2d at 826–27.

If the Court determines that the evidence is sufficient to warrant extradition, it certifies to the Secretary of State that the fugitive may be detained and surrendered to the requesting country and forwards all the evidence presented to the Secretary of State. 18 U.S.C. § 3184; *Ntakirutimana v. Reno*, 184 F.3d 419, 422 (5th Cir. 1999). "The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs." *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980).

**B.    *Analysis.***

As described above, before the Court may find that Guerrero Lujan is extraditable, the Government must show that: (1) the judicial officer has jurisdiction to conduct an extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the person before the Court is the fugitive sought; (4) there is an extradition treaty in full force and effect; (5) the crimes for which surrender is requested are covered by that treaty; and (6) there is competent legal evidence to

4

support the finding of probable cause as to each charge for which extradition is sought. *See in re Extradition of Garcia*, 825 F. Supp. 2d at 826–27. Each of these matters is addressed below.[1]

    1.    *Jurisdiction Over the Proceedings.*

The statute governing extradition proceedings authorizes a broad class of judicial officers to hear extradition cases, including "any magistrate judge authorized so to do by a court of the United States." *See* 18 U.S.C. § 3184. Thus, federal magistrate judges are expressly authorized to hear and decide extradition cases if authorized to do so by the courts in the district. *In re Extradition of Ramos Herrera*, 268 F. Supp. 2d 688, 693 (W.D. Tex. 2003) (citing 18 U.S.C. § 3184). Rule 1(a)(3) of Appendix C of the Western District of Texas's Local Rules for the Assignment of Duties to Untied States Magistrate Judges provides that each "United States Magistrate Judge of this Court is authorized to . . . [c]onduct extradition proceedings . . . ." Accordingly, this Court has jurisdiction to conduct this extradition proceeding.

---

[1] Separate from the six issues addressed below, Guerrero Lujan has made a procedural argument before this Court: that Mexico missed the deadline to present a formal extradition request after his provisional arrest, and thus that he should be released. (*See* Docket Entry 17.) Based on the evidence presented to the Court, this argument fails. According to the Treaty, the provisional arrest of an individual must terminate if, "within a period of 60 days after the apprehension of the person claimed, the executive authority of the requested Party has not received the formal request for extradition" and the necessary accompanying documents. 31 U.S.T. 5059, art. 11. Guerrero Lujan was apprehended on May 24, 2021, and he argues that no formal extradition request was made before July 23, 2021, the deadline dictated by the Treaty. (Docket Entry 17.) The evidence in the record shows, however, that the Secretary of State received a formal extradition request and the accompanying documents from the Mexican Government on July 16, 2021, before the deadline. (Docket Entry 39-2, at 1, 13.) On this basis, Guerrero Lujan's motion for release (Docket Entry 17) is **DENIED**.

Regardless of the ruling on release, however, the Court will proceed to the merits of extradition in this case. The Treaty provides that the termination of provisional arrest does not prejudice the ultimate extradition of an individual, if the formal request for extradition and accompanying documents are delivered at a later date. 31 U.S.T. 5059, art. 11.

2.    *Jurisdiction Over the Fugitive.*

As to the second factor, the extradition statute provides that jurisdiction will apply to any person found within the jurisdiction of the court. 18 U.S.C. § 3184. Guerrero Lujan was initially found in San Antonio, Texas, within the jurisdiction of the Western District of Texas. (*See* Docket Entry 3, at 4; Docket Entry 6.) Thus, the Court has the requisite personal jurisdiction to make a determination on whether Guerrero Lujan is extraditable pursuant to 18 U.S.C. § 3184.

3.    *Identity of the Fugitive.*

As to the third factor, the extradition packet submitted by the Government contains documents confirming the identity of Guerrero Lujan. Among those documents are two statements from co-perpetrators identifying Guerrero Lujan from a photo lineup. (*See* Docket Entry 39-1, at 141–49.) The record also contains copies of Guerrero Lujan's Mexican and American birth certificates; both birth certificates list the same birth parents and identify the same date of birth. (Docket Entry 39-1, at 151; Docket Entry 45-1, at 2.) Defendant was also identified as the individual sought for extradition by the arresting officer at the time of his arrest. (Docket Entry 6.) The Court has reviewed these identification documents and finds sufficient evidence to conclude that the person before the Court is the fugitive sought by Mexico.

4.    *Existence of an Extradition Treaty.*

As to the fourth factor, the Government has submitted the declaration of Tom Heinemann of the State Department, which states that the relevant and applicable treaty provisions are in full force and effect between the United States and Mexico. (Docket Entry 39-2, at 1.) Case law establishes that such statements from State Department officials are entitled to deference. *Cf. Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) (statements regarding treaties given "by the

departments of government particularly charged with their negotiation and enforcement is given great weight."). Thus, the fourth factor is also satisfied.

      5.    *Mutuality of the Crimes at Issue.*

As to the fifth factor, extradition will be considered where there is a sworn complaint charging the fugitive with a crime within the scope of the Treaty. *See* 18 U.S.C. § 3184. In accordance with the principle of dual criminality, an offense is extraditable if it could be punished, under the laws of both countries, by more than a year of imprisonment. *Balzan v. United States*, 702 F.3d 220, 221 (5th Cir. 2012). To determine whether the acts would be punishable in the United States, the Court looks to underlying acts and determines whether they violate federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981).

Article 2 of the Treaty, as relevant here, provides for extradition for willful acts that either (1) "fall within any of the clauses of the Appendix" to the Treaty and are punishable by the laws of both countries by deprivation of liberty for at least one year, or (2) do not fall within the Appendix, but are nevertheless punishable "by the federal laws of both Contracting parties, by a deprivation of liberty, the maximum of which shall not be less than one year." 31 U.S.T. 5059, art. 2.

Guerrero Lujan is charged with (1) Aggravated Homicide, in violation of Articles 293, 299, and 301 Section I, of the Criminal Code for the State of Zacatecas, Mexico; and (2) Aggravated Theft, as defined by Articles 317, 320 Sections I, IV, and VII of that code. Aggravated homicide is specifically addressed in the Appendix to the Treaty. *See* 31 U.S.T. 5059, Appendix (including murder and manslaughter) (*See* Docket Entry 39-2, at 48.) Moreover, the same alleged conduct, if committed in the United States, would be criminal and punishable by more than one year in

prison. *See* 18 U.S.C. § 1111 ("Murder is the unlawful killing of a human being with malice aforethought. Every murder . . . committed in the perpetration of . . . robbery . . . is murder in the first degree. . . . Whoever is guilty of murder in the first degree shall be punished by . . . imprisonment for life."); *see also* TEX. PEN. CODE. ANN. § 19.02 (West 1994) ("A person commits an offense if he intentionally or knowingly causes the death of an individual" or commits an act clearly dangerous to human life in furtherance of the commission of a felony.)

With regard to aggravated theft, it appears to qualify as "robbery" under the Treaty Appendix. *See* 31 U.S.T. 5059, Appendix. (*See* Docket Entry 39-2, at 48.)  Under the Criminal Code for the State of Zacatecas, theft is "committed by whoever takes possession of an asset belonging to a third party and without the consent of whoever is legally empowered to make use thereof." (Docket Entry 39-1, at 75–76.)  The offense may be considered aggravated when "[i]t is executed with violence on the persons or the things. . . ." (*Id.* at 76.)  The punishment for aggravated theft ranges from one to three years of imprisonment. (*Id.*)  By comparison, a person commits robbery under the Texas Penal Code if he, in the course of unlawfully appropriating the property of another with the intent to deprive the owner of the property, intentionally, knowingly, or recklessly causes serious bodily injury to another. TEX. PEN. CODE. ANN. § 29.02 (West 1994). Guerrero Lujan argues that the exact language of these two charges does not line up; however, both address the same underlying conduct of using violence in the perpetration of taking the property of another person.  "[A] requesting country is not obliged to establish that its crimes are identical to ours"; rather, "dual criminality exists 'if the particular act charged is criminal in both jurisdictions'" even if the name of the offense or the scope of the liability differs in the two countries." *In re Extradition of Risner*, No. 3:18-MJ-765-BN, 2019 WL 6118377, at *10 (N.D. Tex. Nov. 18, 2019) (citation omitted).  "This language has been broadly accepted as establishing

that dual criminality requires only that the offenses in the two countries punish the same basic evil;

it does not require that the offenses contain identical elements." *Id.* (citing *Zhenli Ye Gon v. Holt*,

774 F.3d 207, 217 (4th Cir. 2014)). Therefore, the Treaty covers the offenses for which Mexico

seeks extradition.

      6.    *Probable Cause.*

Under § 3184, the Court must determine whether the "evidence [is] sufficient to sustain

the charge under the provisions of the proper treaty." In international extradition cases, courts

apply the federal probable cause standard—whether there are reasonable grounds to believe the

accused committed the charged offense. *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192

(5th Cir. 1971). In making this determination, courts apply a "totality of the circumstances analysis

and make a practical, common sense decision whether, given all the circumstances, there is a fair

probability that the defendant committed the crime." *In re Extradition of Garcia*, 825 F. Supp. 2d

at 828 (citations omitted).

The facts and evidence in the record, as summarized in the collection of interviews and

forensic scientific examinations taken in this case, demonstrate the fair probability that Guerrero

Lujan committed the crimes for which he is charged. The record before the Court contains an

evidentiary packet from a Mexican prosecutor, including witness statements from two co-

perpetrators of the offenses. (Docket Entry 39.) The two co-perpetrators each made detailed

confessions detailing the facts identified above; these witnesses further identified Guerrero Lujan

from a photo line-up as the individual who had been a co-perpetrator the night that Perez Rodriguez

was killed. (Docket Entry 39-1, at 132–34; 136–39; 141–49.) The witnesses recalled specifically

that Guerrero Lujan had hit Perez Rodriguez with his hands and, along with another perpetrator,

dragged him inside of his home, and that Guerrero Lujan was the one to throw Perez Rodriguez's

body from the bed of the truck and down the hill. (*Id.* at 133, 138.) The co-perpetrators' accounts were corroborated by the forensic reports. (*Id.* at 89–89, 99.) While others were clearly involved in the offense with Guerrero Lujan, the aforementioned evidence, when viewed in its totality, provides at least reasonable grounds to believe that Guerrero Lujan himself committed the offenses in question on the night of July 28, 2010. *See Garcia-Guillern*, 450 F.2d at 1192 (reciting the federal standard of probable cause applicable to extradition proceedings); *cf. United States v. Del Hierro-Vega*, 760 F. App'x 301 305–06 (5th Cir. 2019) (finding probable cause when there was "sufficient evidence to infer [defendant's] participation" in criminal enterprise).

### III.   Certificate of Extraditability and Notice.

Having determined that the evidence submitted by the Government of the United Mexican States in support of the formal request for extradition is sufficient under the applicable legal standards, it is hereby **ORDERED** that the extradition request (Docket Entry 27-1) should be **GRANTED**, and the undersigned hereby **CERTIFIES** to the Secretary of State of the United States of America that Everardo Guerrero Lujan should be extradited. Guerrero Lujan shall remain in the custody of the United States Marshal and confined in a proper facility until surrender is made to a duly qualified Mexican agent, or until further order from this Court or from the Secretary of State of the United States of America. The United States Attorney shall ensure that this matter is timely brought to the attention of the appropriate governmental authorities of both the United States of America and Mexico.

It is **FURTHER ORDERED** that the United States District Clerk shall deliver a copy of this Memorandum and Order, along with the evidence, to: U.S. Department of State, Anthony Blinken, U.S. Secretary of State, 2201 C Street, NW, Washington, D.C., 20520.

**SIGNED** on August 18, 2022.

Henry J. Bemporad
United States Magistrate Judge